The first case this morning is People v. Oliver, that's case number 4-1-0-0-5-3-4 for the appellant we have Cynthia Tracy and for the appellee, Timothy Londrigan. Please proceed. May it please the court and counsel. This is a mental health appeal from Champaign County initiated by an 18-year-old young man. And what he's asking for in this case is for this court to uphold his request for statutory compliance essentially with three provisions of the Mental Health Code, Section 1-119 as it existed on the date of his proceeding, Section 3-602 governing medical certificates, and Section 3-811 regarding the need for treatment in the least restrictive available appropriate treatment alternative. First of all, he submits that, granted this case is moot because it was a 90-day order that expired on October 3rd. However, he submits that he falls within all three exceptions to mootness. First of all, capable of repetition, he falls within that exception because the issues of statutory compliance that he raises could very well happen again, especially when you consider that the statute that actually existed on the date his petition was filed and heard is now changed as of the end of July, Section 1-119. And the statute that we're really talking about is the one that came back into effect after this court's ruling in N. Ray Tversky C. in November of 2009, which found the statute which the third prong dealing solely with dangerous conduct as defined in another provision that was held unconstitutional and as referenced in the dangerous provision prong 1 of Section 1-119. Tversky C. found those, found 104.5 and by implication provisions 1 and 3 unconstitutional as they incorporated that definition. So he submits that this issue is capable of repetition as it applies to his case, as is the issue of least restrictive alternative. As far as collateral consequences are concerned, this is his first commitment order. He was subjected to voluntary hospitalization in November and December preceding this case, but this would be the first case to which a stigma would attach. So given his age and that fact, he submits that collateral consequences exception applies. And also, this is a case which he hopes this court will consider, if not under the other two exceptions, then under the public interest exception. Because frankly, in trial court proceedings, Section 3-602 issues frequently arise and the case law is rather sparse and trial courts are often reluctant to even do anything about 3602 issues. And also, least restrictive issues arise in, I would say, almost every case that's heard in the trial court. And again, I think trial judges are often reluctant to even question the proof in these cases. So any message this court could send on that issue I think would be valuable not only to trial counsel, but also to trial judges who would read these opinions as we know they do and listen to them. As far as the actual issues, this is an Article 6 emergency proceeding. Oliver was brought by his father to an assessment center as they proceed in Champaign County and the pleadings were fine. After Torski C, then the Statute 1-119, which defines involuntary admission, reverted back to the pre-Torski C standard, which was alleged in the petition and the petition frames the issue so that was fine. However, as part of the pleadings in a mental health case, two medical certificates are also required. And in this case, it's not a case where we had a third certificate we could fall back on later. In this case, we had two psychiatrist certificates and that was all. And both certificates alleged that he was subject to involuntary admission based on the standard held unconstitutional by implication and by definition of dangerous conduct in a Torski C. So they basically picked up an old form to do their certificates on? Yes, they did. But now when you look at the written language on the form, where the doctor has to write his diagnosis and observations substantively, did that comply with the standard of imminent danger? He made factual allegations, but his conclusions were not. Oliver submits that the conclusions on the certificate, which are the basis for the proceeding, I think they're part of the pleadings just as the petition is, which frames the issues. But what I'm asking you is, in the substantive area where the doctor had to hand write his diagnosis and observations and why he thought Oliver was subject to involuntary commitment, would his writings satisfy the correct standard is what I'm asking you? He alleged facts, that's all. Well, he alleged suicidal ideation and threatening behavior. He alleged facts which would support his opinion that he should be subject to involuntary admission, but then I don't think you can just isolate the factual part of the... I think, you know, it's a one page document. And I think that has to be based on the proper statute and I think it should be consistent. The state argues that under 3602 they're not even required to allege those conclusions. All they have to say in the medical certificate is that this is a person who's in need of involuntary admission and that they've had their rights explained to them and there may be one other thing. But there's nothing in the face of 3602 that says, other than saying that the person is subject to involuntary admission, that you have to spell out that they're subject to the imminent danger of harming themselves or others. But the reason that they're subject to involuntary admission is based on, or I think should be based on the current provision of 1-119. That's really what we're talking about. That's the statutory framework for these proceedings. And I think he's entitled to be judged and to have the pleadings reflect the current standard. Well, the pleadings did reflect it. The petition reflected it. But I don't think you can divorce the certificates which are required. If there had not been two certificates, if there had not been a timely psychiatric certificate filed, then these proceedings would have gone nowhere or should have gone nowhere. And I don't think you can say that any old definition of involuntary admission will do because I don't think that's correct. And I would hope that this court would condone consistency and just being based on the proper framework. Well, there's no question that they picked up the wrong form of medical certificate. Because it was post-Torski. But it had been, this was the end of June, it had been seven months. And especially someone like him, he's had a rough road, he's started college, he's trying to find his way, he's living with his dad. I mean, isn't he entitled to have a psychiatrist that is going to send him away to McFarland that isn't even going to keep him in the hospital in his home community? I mean, this judge sent him to the most secure psychiatric facility without even knowing what treatment he'd get there, without even knowing if there was a bed available. Isn't he, I mean, isn't that an infringement of his liberty? I mean, to me this is a case that just speaks to that. Well, I understand what you're saying in that regard. However, it doesn't seem to me that that's a fault of the trial court. It's a fault of the diminution in mental health services provided through the state of Illinois. And it's my understanding that pretty much everything in central Illinois gets directed to the McFarland Zone Center today. Because the state has decided that that's the most financially expedient way of dealing with the problems that are out there. You know, it's not the trial court's fault, it's the state's fault. That's my point. But I still think in the trial court, someone was bound to notice that this was wrong. That they weren't even using the right statute. No, that wasn't my point. I understand your point, Judge. I was addressing the argument you previously made about sending him to the Zone Center. Well, it's still the most restrictive, secure facility. And it's also the only. Well, actually in his case, I think there could have been other options. Who would pay for it? Well, he had already been at Provena for one stay. Who pays for that? Pavilion. Pavilion, yeah. Yeah, I don't know. I'm thinking it's part of Provena. But I don't know what the Pavilion is. But it was Pavilion where he was in November and December. Yeah, I think. And where he went to have his assessment done was at Pavilion. Yeah, their facilities, they all change names. And I think it might actually be part of the inpatient part of Carl. But that's not really even significant in this case. But he was in a private facility. And, in fact, he ended up being at McFarland not much longer than he had previously been in that private facility. So he was discharged well before the 90 days. So I think, I don't know. I just think they could have considered that facility. That doctor worked at that facility. He was the first one that certified him, or the second one, but still his treating doctor. Didn't he have 45 days of inpatient psychiatric treatment in November, December, and into January of 2009? Excuse me, December and January, and then January of 2010. November, December, and January of 2010. He did. And I don't know this to be true, but I think most insurance policies provide for a maximum of 45 days in a year, don't they? I don't know. I really have no idea in this day and age. But that wasn't even the issue. I mean, they could have explained why he couldn't stay there. I think his dad was a witness. Why didn't they even just ask him, okay, how can you help? I mean, his dad was certainly dealing with him. And I think that's really all it would have taken instead of just conclusions that he had to go. But wasn't his father called as a witness by the state in support of the petition? Yes. So his father was looking for the help for his son, it seemed to me, from reading the record. And there's nothing wrong with that. But I'm just saying, while he was testifying, why couldn't they have had him explain why maybe there wasn't some other alternative? I mean, he had lived with him and dealt with his problems. And I just think they could have explained more and maybe tried for other alternatives, especially in a community like Champaign where he lived. His father did testify that Oliver was not taking his medication as he should. But treatment is more than just that. And based on the new statute, that would be grounds to commit him. But based on the statute he was tried on, that was not grounds to commit him. And prior case law has even held that someone shouldn't be committed just on their refusal of medications. But it's hard to separate that from the problems he then exhibited psychotically with his suicidal ideation and questioning about whether he could hit people in the hospital and those types of things. I mean, in other words, if the medication would control that behavior, that his not taking the medication could lead to him to commit suicide, which seems to me might satisfy the standards we're talking about here. Well, he didn't question the commitment itself. And I think based on the allegations, I think certainly would have been within the framework of the statute alleged in the petition. But I still think there's other forms of treatment. And that's why there's 3811, so that the treatment plan can be discussed and so that there can be at least options. But he had undergone outpatient treatment after his release from the hospital initially. He had. And he decompensated during that treatment with the same psychiatrist who was testifying at the commission hearing. I'm not sure if... I think he had several providers that were working with him in the community. But you're right that doctor was familiar with him. But regardless of all those issues, he still respectfully asks that this court consider the issues he's raised and find the need for 3602 to properly allege conclusions that are consistent with the statute in effect on the date of this hearing. And that this court require proof of less restrictive alternatives that are available and appropriate. Thank you. Thank you. Mr. Wonderman? Good morning, Your Honors. May it please the court and the counsel. I will not argue the mootness doctrine exceptions. I think those are pretty clear in my brief. I will not argue the waiver argument for the same reasons. I think that's pretty clear. I think I have good arguments for each of those issues.  And that's the propriety of the accompanying affidavits of the treating psychiatrist. And I think what we're doing here is we're mixing apples and oranges. As we laid out in the brief, the requirements of 602 do not ask the physician to create a standard. The requirements of 602 are quite specific. And the affidavits meet each and every one of those requirements. Well, except that they may have gone to more than they needed to put in the medical certificate. And what they included in the pre-printed section of the form was incorrect based on what had happened in the case law prior to that. I would agree with Your Honor that they added more in there than what was necessary. So it's superfluous or unnecessary. I don't think it negates the affidavits adhering to the requirements of 602. I think because you put more in there than what was necessary. Now, what you put in there, did it create reversible error? I don't think it did. And the reason is when Tversky C was decided, it was not that the standard was errant. It was that the standard was vague. And we're talking about two different things. An affidavit does not have to recite the specificity equivalent to a statutory language, a particular standard for involuntary admission. First of all, they don't need to state a standard at all. But if they do, I don't think they're held to the same requirements of statute. But even if they are that, they meet the requirements. I mean, the example that you raised in Tversky C was, you know, a passerby or a potential patient could be, I think, yelling racial slurs to somebody and cause psychological harm. All right. That was permissible underneath the old definition of dangerous conduct. That's not what we have here. We have a very specific factual recitation of what the physician is looking at to support his opinion as to why this person is subject to involuntary admission. And so if you look at that factual scenario, basically the guy's going to kill himself. He meets the definition. So we know he's not adopting a Tversky C definition of dangerous conduct, which would make that inappropriate. So it's not vague. It does not meet that standard. Because that term could have been interpreted in one or more ways, such as make it impermissibly vague for a statutory purpose of setting a criteria for admission. It doesn't mean that every time somebody uses that term, if they go on to explain their use of that term in a manner consistent with what this court would require, then their use of that term is appropriate. Mr. Lunder, can I ask you a practical question? Who takes on the responsibility of advising the medical profession about changes in the law regarding these types of things, like a medical certificate? Does the state's attorney's office do it, or who does it? I don't know. I don't know what these forms are still doing in the bin. You're absolutely right, Justice Booth. They grabbed the wrong form. Why is this even on the form? Who's drawing these forms? That presumes somebody has made up a new form, which may or may not have occurred. And obviously they haven't used up the old one, so I don't know what the process is here. I would object to the form in the first place, because they don't need to have that statutory definition adopted in there. Somebody went over the top. In an effort to be complete, they added more in there than what was necessary. They should just stick to the prescriptions of 602, and they'll be okay. But they didn't, and this is what we have today. But nevertheless, this is not reversible error. This is not a violation of 602. It's not even required by 602. It is not vague. It is factually certain on the face of the affidavit itself. What the legislature is looking for is not a legal definition of dangerous conduct. They're looking for a medical affidavit to suggest that there's medical justification to proceed with this involuntary commitment procedure. Apples and oranges. With regard to the least restrictive environment, I think Justice Appleton hits the nail on the head. Yeah, it would be great if the state would pay for, you know, what petitioner is suggesting in this instance. But they won't. They don't have the money. It's a huge problem. I've got to think 80% of the people that are homeless have mental issues. And we're not addressing that issue as a state or a society. I think that's a legislative problem, though, not a judicial one. I think the judge did the best he could with what he had. And if there are alternatives, which I don't know about and which perhaps the judge doesn't know about, how about making it the respondent's obligation to suggest something? If he has insurance that would pay for whatever facility he would prefer to be in other than McFarland, great. But, you know, I don't think the onus ought to always be on the state to investigate all these things. That's why we have an adversarial system. That's why this person is represented by counsel at these proceedings. His dad's there. He's there. If they've got some input as to a reasonable alternative, great. How about submitting it for the court, for the court's consideration, instead of arguing that issue on appeal? Now, these are the kind of things that could be addressed by the trial court if they were made available to the trial court for its consideration. If it wasn't, I don't think it's the state's fault. The state knows what the judge has available to it. And McFarland is it. There are no further questions. Thank you very much. Thank you. Rebuttal, please. I totally agree that everyone is bound to at least attempt the objective of statutory compliance. I've argued it repeatedly before this court. This court has issued opinions where that has been the opinion of the court and this court has even gone so far as to direct the production of checklists and training in that regard. And I submit to you that that is being attempted as I speak. And my point in this case is that no one noticed. No one noticed that these problems were there. And the respondent was the one who was left deprived of his liberty and sent to McFarland. He just simply asked this court to send a message that just because a And I would submit and say to this court, I have never seen a medical certificate that didn't make the conclusions that the statute requires. It doesn't exist in any pleading I have ever seen. It's just part of the process. It's a required part of the pleadings in a mental health case. And why is it wrong to expect a psychiatrist who's going to hold someone and commit them, especially someone young like this, why is it wrong to require them to at least know the proper statute? I think most psychiatrists, I think they consider it part of their responsibilities to know the law. I mean, they're not, I don't mean that they're, I really do think they attempt it. I have questions all the time from ones that I deal with on a routine basis. Maybe it's just my world. But I think it's part of their responsibilities to at least inquire of whoever they're dealing with in these proceedings to at least use the proper form. And I agree with you that everyone should take a part in that process. And really that's all he's asking. These areas are evident on the face of the record. And he's asking for proper pleadings and proper proceedings. Thank you. Thank you. The case is submitted. The court will stand in recess.